958

The People of the State of Illinois, Plaintiff-Appellee, *v.* Leroy J. Fisher, Defendant-Appellant.

(No. 55829;

First District—January 19, 1973.

James J. Doherty, Public Defender, of Chicago, (Stanley Sacks, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Anthony R. Shaker, and Mark T. Zubor, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

In a jury trial defendant Leroy J. Fisher was convicted of murder and received a sentence of 50 to 100 years. On appeal he raises three points:

(1) that the trial court erred in permitting the State's Attorney to cross-examine a defense witness as to his use of other names; (2) that it was error for the State's Attorney to comment on the failure of the defense to call two persons to testify who had been mentioned in the testimony of other defense witnesses; and (3) that the sentence is excessive and should be reduced.

The homicide, a shooting, took place in a housing project at 117 South Rockwell Street in Chicago on May 2, 1970, at about 10:00 P.M. At trial defendant contended that he had acted in self-defense. The prosecution contended that the shooting was without provocation or justification. According to the State's witnesses the deceased, Willie Lomax, his brother and two companions arrived at the building at about 10:00 P.M. with the intention of going to a party in apartment 507. They pressed the button for both elevators. The elevator which arrived first stopped only at even numbered floors. They decided to take the elevator to the sixth floor and walk down to the fifth floor. As they exited the elevator on the sixth floor they encountered defendant who was standing near the elevator. He asked them: "Where do you crib at?" The defendant had a gun in his belt; the deceased was unarmed. The four men continued to walk to the stairwell and down the stairs. As they did, defendant began to shoot. Two bullets hit the deceased. No gun was found on deceased.

The State also called the woman who was giving the party in apartment 507. She testified that one of the three men who accompanied the deceased to the building was among the invited guests.

The defendant contended that he was giving a party the night of May 2, 1970. The defense called defendant's mother, his sister, a friend by the name of Tyrone Dodson and defendant. Their testimony in some respects conflicted with each other's and in some instances contained self-contradictions. Essentially defendant tried to establish that he was giving a party, that the four men arrived at his apartment and that he asked them to leave. As he was escorting them to the stairway, the deceased turned around and began shooting at him. Defendant claims that he then pulled his own gun and returned the fire. Defendant's sister testified that she saw the four men come to the apartment and leave. She saw her brother leave too. She testified that there were about 35 people at the party and that there were too many people on the porch for her to see the actual shooting. Aside from the defendant, the only other witness to testify that the deceased had a gun was Tyrone Dodson. Dodson testified that he was at defendant's party; that while on the porch he saw deceased and two others get off the elevator and head for the stairs; that an

argument with defendant arose and deceased suddenly turned around and began firing at defendant.

OPINION

■■ Defendant's first contention is that the "trial court erred" in permitting the State's Attorney to question a defense witness, Tyrone Dodson, as to his use of other names.

The testimony was:

Cross-examination by Mr. Egan:

"Q. What is your name?
A. Tyrone Dodson.
Q. Do you have any other names?
A. Anthony.
Q. Anthony?
A. Yes; and Teeny.
Q. Do you have any other names?
A. Yes; Pot.
Q. Pot?
A. Yes.
Q. By the nickname of Pot?
A. Yes.
Q. Do you have any other names?
A. No.
Q. Did you ever go by any other names?
A. No.
Q. Did you ever go by the name of Teeney Robinson?
A. Yes; just once, yes.
Q. Did you ever go by the name of Tyrone A. B. Dodson?
A. Yes.
Q. Did you ever go by the name of Tyrone A. D. Dots?
A. No, I don't think so, no.
Q. Did you ever go by the name of Tyrone Dot?
Mr. Hoard: We will object to this.
The Court: The objection is overruled.
Mr. Egan: Did you ever go by the name of Tyrone Dot?
A. No."

Defendant's privately retained counsel made no objection to the questions until all but one had been asked. The written motion for a new trial contains no reference to the allegedly improper series of questions. Defendant also contends that the harm of the questions was compounded when the State's Attorney in his closing argument referred to the witness' use of more than one name. Again, no objection was made by defense counsel. Again, the written motion for a new trial makes no mention of

the closing argument. Therefore these contentions are deemed waived. *People v. Irwin,* 32 Ill.2d 441, 207 N.E.2d 76; *People v. Jackson,* 4 Ill. App.3d 698, 702, 281 N.E.2d 373.

■■ Defendant's second contention is that the prosecutor committed reversible error by virtue of other allegedly improper remarks in his closing argument. The State's Attorney commented that one Adrenne Shanker had not been called by the defense to testify. Defendant's sister, Evelyn Fisher, testified that she saw four men come to their door and talk to her brother and that her friend Adrenne Shanker was with her before and during the shooting. She saw her brother walking down the porch with the four men and heard the shots. Adrenne Shanker was with her at that time also. The State's Attorney also commented on the failure of the defense to call one Shirley Watson to testify. Her name was brought up in the course of Tyrone Dodson's testimony. He testified that she had been in his company on the evening of the shooting but had left about ten minutes before the shooting. Defendant's counsel made no objection to the remarks of the State's Attorney and did not raise this issue in his motion for a new trial. Therefore it is deemed waived. (*People v. Irwin, supra.*) Furthermore, since defendant's evidence showed that witnesses existed who were presumably under defendant's control, the prosecutor had a legitimate right to comment thereon. *People v. Williams,* 40 Ill.2d 522, 528, 240 N.E.2d 645, U.S. *cert.* denied 393 U.S. 1123.

■■ Finally, defendant contends that the sentence imposed was excessive. At the time of the shooting defendant was on probation. He had previously been convicted of robbery. Shortly before the shooting he had been released from the House of Correction. The record is devoid of any mitigating circumstances and we find no reason to reduce the sentence. (*People v. Ward,* 4 Ill.App.3d 631, 281 N.E.2d 703.) Judgment and sentence are affirmed.

Affirmed.

ENGLISH and LORENZ, JJ., concur.